**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| JONATHAN HICKERSON,<br><br>*Plaintiff*,<br><br>*v.*<br><br>STATE OF MICHIGAN, et al.,<br><br>*Defendants*.<br>_______________________________/ | Case No. 5:25-cv-14180<br><br>Judith E. Levy<br>United States District Judge<br><br>Patricia T. Morris<br>United States Magistrate Judge |

# REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION TO AMEND (ECF No. 27); and DENY AS MOOT DEFENDANTS' MOTION TO DISMISS (ECF No. 12)

## I. RECOMMENDATION

For the following reasons, **IT IS RECOMMENDED** that the Court **GRANT IN PART** and **DENY IN PART** Plaintiff's motion to amend (ECF No. 27). **IT IS FURTHER RECOMMENDED** the Court **DENY AS MOOT** Defendants' motion to dismiss (ECF No. 12). If these recommendations are adopted, the Undersigned will enter a scheduling order with deadlines for discovery and dispositive motions.

## II. REPORT

### A. Background

Plaintiff Jonathan Hickerson has been a prisoner in the custody of the Michigan Department of Corrections (MDOC) for over ten years. Plaintiff has been

blind since a failed surgery in 2018. (ECF No. 1, PageID.1). Generally, Plaintiff alleges Defendants have discriminated against him by not providing him equal educational opportunities as other similarly situated inmates. (*Id.*). Plaintiff sues several MDOC employees and Jackson College, which runs the continuing education program (CEP) at the prison. He brings equal protection, due process, free speech and association, conspiracy, Americans with Disabilities Act (ADA), Rehabilitation Act (RA), Intentional Infliction of Emotional Distress (IIED), Persons with Disabilities Civil Rights Act (PWDCRA), and retaliation claims for denying him reasonable accommodations to gain access to the CEP. (ECF No. 27-1).

MDOC Defendants[1] filed a motion to dismiss, or, in the alternative, for summary judgment based on exhaustion. (ECF No. 12). Plaintiff responded (ECF No. 23) and additionally filed a motion to amend the complaint to cure any perceived deficiencies in the original complaint (ECF No. 27). The motions are fully briefed and ready for consideration. (ECF Nos. 29, 30, 36, 38).[2]

**B. Legal Standards**

**1. Motion to Dismiss**

---

[1] Plaintiff originally brought his claims against a number of MDOC employees as well as against Jackson College and some of its employees. All of the individually named Jackson College employees were later dismissed through stipulation, leaving only Jackson College as the sole non-MDOC Defendant. (ECF No. 22).

[2] Plaintiff has also filed a motion to compel and for sanctions (ECF No. 31), which the Undersigned will address at another time.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint regarding whether it states a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When deciding a motion under this subsection, a "court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle [him] to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). A complaint must be dismissed pursuant to Rule 12(b)(6) if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). Additionally, when an action is brought under a civil rights statute, a court must scrutinize a motion to dismiss with special care. *Warman v. Mount St. Joseph Univ.*, 144 F.4th 880, 889 (6th Cir. 2025).

A court need not accept as true legal conclusions or unwarranted factual

inferences contained in the complaint. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). For the purposes of a motion to dismiss, if two opposing inferences can plausibly be drawn from the alleged facts, a court's obligation is to construe the complaint in the light most favorable to the plaintiff and accept his or her inference as true. *Sutton v. Metro. Gov't of Nashville and Davidson Cnty.*, 700 F.3d 865, 873 (6th Cir. 2012).

Further, although a court primarily considers the factual allegations contained in the complaint, "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'" *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). The Sixth Circuit has specifically "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

Moreover, when a plaintiff proceeds without counsel, a court must liberally

construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Finally, "[t]o plausibly state a cause of action under 42 U.S.C. § 1983, a plaintiff must plead two elements: '(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law.'" *Whitacre v. Adult Parole Auth.*, No. 23-cv-3625, 2024 WL 4750214, at *2 (S.D. Ohio Nov. 12, 2024) (quoting *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008)).

**2. Motion for Summary Judgment**

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role at summary judgment is not to weigh the evidence but to determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 249–50. Accordingly, a court views all evidence and reasonable inferences in favor of the nonmoving party. *Couzens v.*

*City of Forest Park*, 114 F.4th 571, 577 (6th Cir. 2024).

"Because defendants carry the burden of proof for exhaustion, they bear an initial summary judgment burden that is higher in that they must show that the record contains evidence satisfying their burden of persuasion and that no reasonable jury would be free to disbelieve it." *Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir. 2023) (cleaned up); *see also Lamb v. Kendrick*, 52 F.4th 286, 295 (6th Cir. 2022) (holding defendants have burden to present evidence showing plaintiff's ability to exhaust was not hindered when plaintiff contends he was prevented from exhausting). Thus, summary judgment is appropriate only if there is no genuine dispute of material fact that the plaintiff has failed to exhaust. *Morgan*, 67 F.4th at 366. But the nonmoving party cannot rebut a Rule 56 motion by merely alleging a genuine factual dispute exists. Fed. R. Civ. P. 56(e). Instead, the nonmoving party must show "the evidence is such that a reasonable jury could return a verdict" in their favor. *Anderson*, 477 U.S. at 248.

### 3. Motion to Amend

Plaintiff's motion for leave to amend is governed by Rule 15(a)(2) of the Federal Rules of Civil Procedure, which provides that a party may amend their complaint "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a); *see also Berry v. Specialized Loan Servicing, LLC*, No. 18-cv-02721, 2020 WL

3485577, at *4 (W.D. Tenn. Feb. 24, 2020); *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 Fed. App'x 369, 376 (6th Cir. 2009).

A court has discretion in whether to permit a plaintiff to amend their complaint. *Berry*, 2020 WL 3485577, at *4 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Troxel Manuf. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970–71 (6th Cir. 1973)). In its discretion to allow an amendment, a court considers factors such as undue delay, repeated failure to cure deficiencies by amendments previously permitted, bad faith or dilatory motive, futility of an amended pleading, and undue prejudice to the opposing party. *Berry*, 2020 WL 3485577, at *4 (citing *Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x 397, 406 (6th Cir. 2006)).

**C. Discussion**

Plaintiff's motion to amend the complaint argues the proposed amended complaint resolves any perceived deficiencies with the original complaint. (ECF No. 27, PageID.280–82). As such, the Undersigned will consider this motion first. *See Lawson v. London Police Dep't*, No. 25-cv-176, 2026 WL 2754849, at *1 (E.D. Ky. Sept. 17, 2026) (discussing that motions to amend should be decided prior to motions to dismiss).

**1. College Defendants' Opposition**

The Undersigned first considers College Defendants' opposition to Plaintiff's motion. First, much of their opposition is focused on arguing that Plaintiff's

proposed amended complaint asserts new claims and facts against previously dismissed individual College Defendants (namely Daniel Phelan, Lynn Wood, Janel Elenbass, Ariel Maturine, and Alytrice Brown). (*See* ECF No. 29, PageID.329). Not so. Plaintiff does not list any of them as parties (*see* ECF No. 27-1, PageID.284–86) or allege any claims against them (*see id.* at PageID.310–322).

For example, Plaintiff's § 1983 claims are against all individually named Defendants and Defendant MDOC. (*Id.* at PageID.310–15). The only time dismissed Defendants are discussed is in support of his claims against MDOC Defendants that they collaborated with the staff at Jackson College to intentionally prevent Plaintiff from receiving reasonable accommodations and access to educational programs. (*Id.* at PageID.313). But this does not automatically transform his claims against named Defendants into claims against unnamed individuals. *Cf. Sanders v. Washington*, No. 20-cv-889, 2020 WL 6110787, at *13 (W.D. Mich. Oct. 16, 2020) ("The fact that Plaintiff mentions [others] in the complaint does not suffice to state claims against them where he has not named them as Defendants."); *Foster v. Ohio Dep't of Rehab. and Corr.*, No. 22-cv-2153, 2024 WL 5400522, at *3 (S.D. Ohio July 25, 2024) ("Although Plaintiff identifies grievances against other people and entities in the SAC, they are not named in its caption and therefore **<u>are not</u>** Defendants. Fed. R. Civ. P. 10(a) ('all the parties' must be named in the caption of a complaint). . . . Because Plaintiff's allegations

against these individuals and entities are **not** part of this lawsuit, they are considered only when necessary to explain the allegations supporting a claim against one or more of the named Defendants." (emphases in original)), *report and recommendation adopted*, 2025 WL 899039 (S.D. Ohio Mar. 25, 2025); *Ford v. Jindal*, No. 19-cv-13207, 2022 WL 992959, at *5 (E.D. Mich. Mar. 31, 2022) ("To the extent that any new or revised proposed allegations involving [previously dismissed] Defendant Crisenbery relate to MDOC or any other defendant that has not been dismissed from this action, the Court will allow the amendments if they are not otherwise disallowed due to futility, as analyzed below."). Plaintiff's other claims are similarly against "all individually named Defendants" or specific Defendants such as "Defendant College." (ECF No. 27-1, PageID.315, 318, 319, 322). Because the individual College Defendants are not added back into the complaint as defendants in the proposed amended complaint, their arguments on this point are irrelevant.

College Defendants also argue that Plaintiff tries to add additional factual allegations and claims, unfairly using MDOC Defendants' motion to dismiss as a roadmap to identify and correct deficiencies in the original complaint. (ECF No. 29, PageID.329). They cite to *Ford Motor Co. v. Kahne*, 379 F. Supp. 2d 857 (E.D. Mich. 2005), and *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999), in support. But, as even College Defendants admit, *Ford* dealt with a motion to

amend "at an advanced stage of litigation." (ECF No. 29, PageID.328). Indeed, the court in *Ford* denied Ford's motion to amend for failing to show good cause under Federal Rule of Civil Procedure 16 (not Rule 15 as here) because Ford had waited until well after the court's deadline for amendments, discovery had been completed, and dispositive motions *on the merits* had been filed. *Ford*, 9 F. Supp. 2d at 876–77 ("Ford offers no good cause for why it could not have pleaded this claim initially, or at least *well before* this late stage of the case, following the end of discovery and the filing of Defendant's dispositive motion." (emphasis in original)). All of the cases cited in *Ford*—including *Duggins*—also dealt with late-stage litigation. *Id.* at 877–78; *see Duggins*, 195 F.3d at 834 ("Plaintiff delayed pursuing this claim until after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed. There appears to be no justification for the delay, and the plaintiff proposes none. Allowing amendment at this late stage in the litigation would create significant prejudice to the defendants in having to reopen discovery and prepare a defense for a claim quite different from the sex-based retaliation claim that was before the court.").

None of the same justifications hold true here. This case is still in the early stages of litigation, with only motions to dismiss and for summary judgment based on exhaustion (which are commonly filed with a motion to dismiss) having been filed. The Undersigned has yet to enter a scheduling order setting deadlines for

discovery and dispositive motions. Moreover, Plaintiff originally filed this case *pro se* and counsel has since appeared on his behalf. It is common for new counsel to file (and for the Court to allow) an amended complaint when taking over for a *pro se* plaintiff. *See, e.g.*, *Jarvis v. Oakland-Macomb Obstetrics & Gynecology, P.C.*, No. 21-cv-10381, 2022 WL 1177165, at *4 (E.D. Mich. Apr. 20, 2022). Indeed, counsel's amendments generally make the allegations and claims clearer, helping the Court and all parties.

Finally, College Defendants object that Plaintiff failed to comply with E.D. Mich. LR 7.1(a)(1), which requires parties to confer with other parties prior to filing a motion. Failure to comply allows the Court to impose discretionary sanctions such as denying the motion. *Id.* (a)(3). College Defendants rely on *Williams v. Brose Jefferson, Inc.*, No. 21-cv-10010, 2023 WL 9231660 (E.D. Mich. May 25, 2023), where the court denied without prejudice a discovery motion after the moving party insufficiently attempted to confer on the issue. But this was a discretionary ruling. In fact, in the same case, two later motions were ruled on despite similar issues with failing to confer. *See id.*, 2023 WL 9231996, at *3 (E.D. Mich. Sept. 14, 2023) ("[I]n the interest of resolving this matter on the merits, the undersigned shall overlook Plaintiff's last-minute efforts to seek concurrence. Plaintiff is cautioned seeking concurrence under local rule 7.1 is not merely perfunctory and any further failures will warrant more than this Court's admonishment."); *id.*, 2024 WL 4775738, at *3

(E.D. Mich. Nov. 13, 2024) ("The Court will not deny Defendant's motion because of its anemic attempt at seeking concurrence. . . . The Court is confident that the parties are aware of their obligations in Local Rule 7.1. They must adequately seek concurrence or any future motions may be summarily denied or stricken.").

Here, the Undersigned does not believe denying the motion to amend without prejudice due to a failure to seek concurrence would benefit either party. College Defendants clearly oppose the motion to amend and denying the motion for this purpose would merely delay ruling on it until a later date. *See Trs. of Sheet Metal Workers Loc. Union No. 80 Ins. Tr. Fund v. Duggan*, No. 13-cv-10415, 2015 WL 4944125, at *3 (E.D. Mich. Aug. 19, 2015) (granting motion to amend where violation of local rule 7.1 was "harmless because Defendant clearly opposes the motion"). The error here was harmless in this instance.[3] Plaintiff's counsel is **CAUTIONED** to comply with the rule in the future. Failure to do so may result in

---

[3] The Undersigned notes that Plaintiff has an outstanding motion to compel and for sanctions (ECF No. 31), in which Plaintiff's counsel allegedly also failed to meet and confer in good faith to attempt to resolve or narrow discovery issues and objections before bringing them to the Court's attention (*see* ECF No. 39, PageID.413). The Undersigned will deal with this motion in a separate order after Plaintiff has replied, unless he chooses to withdraw the motion pending a proper conference between the parties. *See* Fed. R. Civ. P. 37(a)(1); E.D. Mich LR 7.1(a); *Curtis v. Deutsche Bank*, 829 F. Supp. 3d 303, 323–26 (E.D. Mich. 2025) ("Besides those emails, the Parties provided no other information about their efforts to define, narrow, or resolve their dispute. And these perfunctory emails do not demonstrate a *good-faith* attempt to resolve the dispute without court intervention. . . . Under Civil Rule 37(a)(1), absent a showing that other communication methods would be futile, parties do not 'confer' with one another when they do no more than send the opposing party token emails.").

sanctions including denial of the motion.

**2. MDOC Defendants' Objections**

The Undersigned next addresses MDOC Defendants' objections to Plaintiff's motion to amend. First, they argue allowing amendment would lead to undue delay and prejudice because the motion to dismiss has been fully briefed and would render it moot. Second, Defendants argue amendment would be futile because (1) the claims are still unexhausted and (2) the proposed amendments would not survive a motion to dismiss.

**a. Delay and Prejudice**

Defendants first argue allowing amendment would lead to undue delay and prejudice because the motion to dismiss has been fully briefed and amendment would render it moot. (ECF No. 30, PageID.337–38). The latter point is generally true. *See Billings v. CoreCivic, Inc.*, No. 25-cv-714, 2025 WL 2799976, at *2 (N.D. Ohio Sept. 30, 2025) (collecting cases). Nevertheless, MDOC Defendants' second part of their response details portions of their motion to dismiss which are still relevant to the proposed amended complaint, arguing that such amendments are futile. (*See* ECF No. 30, PageID.339–42). As such, the Undersigned will consider the relevant parts of the motion to dismiss and for summary judgment on the merits. In doing so, the Undersigned ensures that granting leave to amend will not lead to undue prejudice or delay for MDOC Defendants as the relevant portions of the

motions will still be considered and decided upon.[4] *See Billings*, 2025 WL 2799976, at *2 ("District courts have discretion to apply a pending motion to dismiss to portions of an amended complaint that are 'substantially identical to the original complaint.'" (quoting *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021))).

**b. Exhaustion**

MDOC Defendants argue Plaintiff's motion to amend is futile because his claims were not properly exhausted. (ECF No. 30, PageID.341 (citing ECF No. 12, PageID.91–112)). Plaintiff responds that the grievance process is unavailable to him as a blind prisoner. (ECF No. 36, PageID.392; ECF No. 23, PageID.253–59).

Under the Prison Litigation Reform Act (PLRA), prisoners may not bring actions against prison officials to challenge conditions of their confinement under § 1983, "or any other Federal law," without first exhausting all available administrative remedies. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners must exhaust their administrative remedies "using all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation omitted) (emphasis in original). "Proper exhaustion demands compliance with an

[4] Therefore, the Undersigned also recommends **DENYING AS MOOT** MDOC Defendants' motion to dismiss and for summary judgment (ECF No. 12). To the extent it is still relevant to the amended complaint, MDOC Defendants have fully briefed the issues in their prior motion and response to Plaintiff's motion to amend and the Undersigned has considered these arguments.

agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. "'[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.'" *Walker v. Washington*, No. 23-2104, 2025 WL 1145719, at *2 (6th Cir. Apr. 15, 2025) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). "[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Jones*, 549 U.S. at 219 (quotation omitted).

Ultimately, "the PLRA is clear that 'a prisoner confined in any jail, prison, or other correctional facility' must exhaust only 'such administrative remedies as are available.'" *Savoie v. Oliver*, 731 F. Supp. 3d 862, 874 (E.D. Mich. 2024) (quoting 42 U.S.C. § 1997e(a)). "[I]f a prisoner cannot make use of the prison grievance process—if administrative remedies are unavailable—she is excused from the exhaustion requirement." *Bailey v. Washington*, 784 F. Supp. 3d 997, 1006 (E.D. Mich. 2025) (citing *Ross v. Blake*, 578 U.S. 632, 643–44 (2016)). Further, "[a]t the end of the day, someone must carry the burden" of proving or disproving exhaustion, and the PLRA reflects Congress' judgment that "it is considerably easier for a prison administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion." *Lamb*, 52 F.4th 286, 294–95, 298 (cleaned up); *see also Napier v.*

*Laurel Cty.*, 636 F.3d 218, 225 (6th Cir. 2011) (holding that the initial burden of proof to show a failure to exhaust administrative remedies lies with the defendants).

In Michigan, a prisoner generally must proceed through resolution of a Step III appeal prior to filing a civil suit. *See Ryan v. G. Robert Cotton Corr. Facility*, No. 22-1808, 2023 WL 6059802, at *2 (6th Cir. May 15, 2023). Policy Directive (PD) 03.02.130 outlines MDOC's three-step, internal process for prisoners to raise formal complaints. (ECF No. 12-2). Pursuant to the directive, a prisoner is required to first informally "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue" and if unsuccessful, file a Step I grievance within five business days. (*Id.* at PageID.121–22). If a prisoner is dissatisfied with the disposition of the Step I grievance or did not receive a timely response, then he can file a Step II grievance. (*Id.* at PageID.123–24). Similarly, if a prisoner is dissatisfied with the Step II response or did not receive a timely response, he has ten days to file a Step III grievance. (*Id.* at PageID.124). A grievance may be rejected for procedural reasons such as untimeliness or failing to attempt to resolve the issue with the staff member prior to filing a grievance. (*Id.* at PageID.119–21).

Additionally, there is a separate process for requesting reasonable accommodations under the ADA and appealing denials of such requests:

> E. Initial requests for reasonable accommodations under the Americans with Disabilities Act *shall not be processed as grievances* under this

> policy but shall be *forwarded to the Worksite ADA Coordinator for processing* under PD 04.06.155 "Offenders With Disabilities." *Appeals* of a final determination *shall not be processed as grievances* under this policy but *shall be forwarded to the Worksite ADA Coordinator* to be processed under PD 04.06.155 "Offenders With Disabilities."
>
> F. If a Step I grievance is received regarding a *previously approved* ADA accommodation, the Grievance Coordinator shall assign the Worksite ADA Coordinator as responder. The Worksite ADA Coordinator shall investigate, compile evidence, draft a proposed response, and forward it to the Statewide ADA Coordinator to receive direction with respect to a final response. The Worksite ADA Coordinator shall then forward the final Step I response to the Grievance Coordinator. If the Grievance Coordinator intends to reject the grievance for reasons defined in policy, they shall forward the draft rejection to the Manager of the Grievance Section, Office of Legal Affairs (OLA), for guidance.

(*Id.* at PageID.118 (emphasis added)). Prisoners use form CSJ-247A to file a grievance pursuant to PD 03.02.130. (*Id.* at PageID.121). On the other hand, PD 04.06.155 directs prisoners to use form CSJ-562 to "mak[e] a request for a reasonable accommodation," and send it "to the Worksite Offender ADA Coordinator." (ECF No. 12-4, PageID.167). In turn, "[o]nly the Statewide Offender ADA Coordinator may make a final determination on a reasonable accommodation request," and there is an appeal process described within the policy for when requests are denied. (*Id.* at PageID.167–68). An initial request for an accommodation may take 10 business days for the facility coordinator to contact the offender and an inmate has 30 business days after the response to file an appeal. (*Id.*). Importantly, after the appeal, "[a]n offender cannot grieve a final determination." (*Id.*); *see also*

*Wilson v. Mich. Dep't of Corr.*, No. 18-cv-10008, 2019 WL 5800292, at *7 (E.D. Mich. June 6, 2019), *report and recommendation adopted in part*, 2019 WL 3759424 (E.D. Mich. Aug. 9, 2019).

The Undersigned has previously concluded in another case Plaintiff brought that "satisfying the procedures in 04.06.155 alone properly exhausts administrative remedies related to claims asserting an improper denial of reasonable accommodations." *Hickerson v. Washington*, No. 25-cv-12884, 2026 WL 1361298, at *5 (E.D. Mich. Apr. 29, 2026), *report and recommendation adopted*, 2026 WL 1352022 (E.D. Mich. May 14, 2026).

Nevertheless, "an inmate must only exhaust available remedies, not unavailable remedies." *Lamb*, 52 F.4th at 292; *see also Coopwood v. Wayne Cnty.*, 74 F.4th 416, 422 (6th Cir. 2023) (citing *Does 8–10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019)). There are at least three situations which make exhaustion unavailable: (1) when the process operates as a simple dead end, with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) when the mechanism for relief is so opaque or confusing such that no ordinary prisoner can discern or navigate it; and (3) when prison administrators thwart inmates from using the grievance process through machination, misrepresentation, or intimidation. *Lamb*, 52 F.4th at 292–93 (citing *Ross v. Blake*, 578 U.S. 632, 643–44). Even if unavailable, an inmate must still make affirmative efforts, "sufficient under the

circumstances," to comply with administrative remedies. *Id.* at 293. Moreover, if the plaintiff contends they were prevented from exhausting, the defendant must present evidence showing the ability to exhaust was not hindered. *Id.* at 295.

Plaintiff argues the grievance processes at MDOC are generally unavailable to him, although in some cases he has been able to enlist the help of fellow inmates to file grievances on his behalf, for better or worse. (ECF No. 23, PageID.254–56). Specifically, Plaintiff avers:

> 13. All misconducts written against for rule violations, were impossible to defend myself against while I lacked vision access MDOC rules, text-to-speech was unavailable, including in the appeals process.
>
> 14. MDOC Electronic Law Library (ELL) computers remain inaccessible to research my felony convictions and law related to challenging the conditions of my confinement, also, law library clerks are forbidden from assist writing grievances.
>
> 15. In 2019, I was informed that a 'reader/writer' prisoner aide position had been, created for those without GED, the handicapped, and that these aides available for grievance writing, kites, letters, complaints, medical request care, and all writing I may need.
>
> 16. Many of the inmates assigned to these positions refused to assist me, were borderline illiterate, would [illegible] money for services, stole information from my documents and wrote my friends/family.
>
> 17. I was relegated to make 'friends' of other prisoners to write medical kites on my behalf which forced waiver privacy in health care related issues to fellow prisoners.
>
> 18. Prisoners writing and appealing grievances on my behalf often resulted in the grievances being dismissed technicalities since the MDOC offers no courses in proper grievance writing.

> 19. I relied on other prisoners to write attorneys on my behalf, seeking legal representation, and garnered responses.
>
> 20. My lack of vision and inability to access the grievance process or ELL to research legal issues, relating to MDOC policies and procedures violations, prevented me from filing civil actions related to inhumane conditions confinement listed within the supplemental complaint as well as all other related issues.

(*Id.* at PageID.256 (sic throughout)). Plaintiff's proposed amended complaint provides additional allegations regarding his inability to follow the grievance process himself. (*See, e.g.*, ECF No. 27-1, PageID.297–98, 306–08).

Defendants first argue Plaintiff has only alleged "generalized" statements insufficient to create a genuine issue on whether the grievance process was unavailable. (ECF No. 24, PageID.265 (citing *Belser v. James*, No. 16-cv-2578, 2017 WL 5479595 (6th Cir. June 6, 2017))). But Plaintiff's specific allegations of unavailability here are quite different from those in *Belser*, where the plaintiff merely alleged that a guard refused to process his grievances without providing any additional information.

Here, Plaintiff is in a completely different position as he is blind and is thus unable to complete the grievance process himself. He has averred that MDOC does not have a separate grievance process to allow blind prisoners like him to grieve issues; that library staff is unable to help him; that prisoners assigned to help him have exploited him, refused help, and written insufficiently detailed or legible grievances; and that he is only sometimes able to enlist the help of friends to submit

grievances or appeals on his behalf. This is a far cry from the "generalized" statements of unavailability which courts have held insufficient in other cases.

Next, Defendants argue Plaintiff's own grievance record belies his argument that the grievance process is unavailable to him as, during the time at issue, he successfully submitted one ADA request for accommodations and pursued six grievances through Step III. (ECF No. 24, PageID.265–66). The Undersigned agrees that this kind of evidence can generally show the grievance process is available to a prisoner and has previously recommended granting summary judgment based on exhaustion on these arguments. *See, e.g.*, *Jones v. Campbell*, No. 24-cv-10683, 2025 WL 4690433, at *4 (E.D. Mich. Oct. 24, 2025) ("The record thus shows that Jones repeatedly used the grievance system during the period he alleges Defendants thwarted his ability to appeal grievances through Step III. 'Clearly, the grievance system was available to [Jones] during the relevant period and he was willing to use it.' *Sango v. Fleury*, No. 20-cv-00186, 2021 WL 2942556 (W.D. Mich. May 6, 2021)."), *report and recommendation adopted*, 2026 WL 860481 (E.D. Mich. Mar. 30, 2026) ("[Jones] does not answer 'why or how he was able to continue to file Step I and II grievances but was thwarted in his attempts to file Step III grievances.' If anything, [his evidence] again shows that the grievance process was available to him throughout the relevant time period." (internal record citation omitted)).

But the facts here are different. Plaintiff readily concedes he is sometimes able to enlist the help of other prisoners to file grievances and grievance appeals on his behalf. But not always. Additionally, the grievances filed on his behalf are not always written how he wants them, are sometimes illegible, or are otherwise insufficient due to his inability to double check the contents before they are filed. True, Plaintiff was sometimes able to file grievances during the relevant period. But this fact does not mean as much as it does for sighted prisoners. The inference in those cases is that if sighted prisoners can file grievances during the relevant period, they are also able to file grievances on the relevant issues. Here, the inference is merely that Plaintiff was able to enlist somebody's help for some grievances but not others. Finally, one of Plaintiff's main claims in his amended complaint is that he is being denied due process because he lacks accessible grievance or appeal processes. (ECF No. 27-1, PageID.313).

To the extent Defendants try to shift their burden onto Plaintiff by requiring additional proof of unavailability, the burden is theirs and Plaintiff's affidavit is enough to create a genuine issue of material fact as to whether the grievance process was available to him. *Lamb*, 52 F.4th at 298. Defendants have not presented irrefutable evidence in the face of Plaintiff's evidence of unavailability. Therefore, the Undersigned concludes allowing the amended complaint would not be futile due to failure to exhaust.

### c. Non-cognizable Claims

Defendants argue many of their original arguments for dismissal remain true even with the proposed amendments. First, Defendants argue "Hickerson fails to state any constitutional claims arising out of his inability to participate in CEP because 'he does not enjoy a protected liberty interest in the participation in a prison program.'" (ECF No. 30, PageID.339 (quoting ECF No. 12, PageID.99 and citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976))). But while this argument may have some merit at the motion for summary judgment stage, Defendants' minimal argument here and in their original motion to dismiss does not warrant further review. First, Defendants' blanket contention that no constitutional claims may be premised on Plaintiff's inability to participate in a prison program is much broader than the dicta in *Moody*, which ultimately dealt with a much different issue: whether a parolee incarcerated for another crime is entitled to a prompt parole revocation hearing when a parole violator warrant had been issued but not served. *Moody*, 429 U.S. at 79. The petitioner there only asserted protected liberty interests in his desire to serve his sentences concurrently, to have earlier parole eligibility, and in his prison classification. *Id.* at 85. Moreover, unlike in *Moody*, Plaintiff here alleges an equal protection violation.

Defendants later cite *Carter v. Morgan*, 1998 WL 69810, at *2 (6th Cir. 1998), and *Tribell v. Mills*, 1994 WL 236499, at *1 (6th Cir. 1994), for the

proposition that denial of participation in or removal from educational classes is not actionable. (ECF No. 12, PageID.101). But *Tribell's* "holding" had nothing to do with removal of participation in educational classes. *Tribell* instead dealt with whether being administratively segregated for a prolonged period without a hearing constituted a due process violation. Defendants' citation refers—not to the Sixth Circuit's holding—but to a quote from the district court's order on an issue that was not appealed.[5] *Carter* was decided on a motion for summary judgment where "the uncontradicted evidentiary material of record established that Carter was not treated differently from other similarly situated inmates." *Carter*, 1998 WL 69810, at *1. It is too soon, on Defendants' minimal argument, to outright reject Plaintiff's constitutional claims at the motion to dismiss stage.

Next, Defendants argue "Hickerson also fails to state any constitutional claims arising out of the implementation of the policies or purported policies Hickerson takes issue within this lawsuit." (ECF No. 30, PageID.339–40 (citing ECF No. 12, PageID.99 ("Lastly, to the extent Hickerson's claims arise out of an individual State Defendants' involvement in the implementation of policies, this Court has held such conduct fails to state a constitutional claim. *Crawford v. Washington*, No. 4:17-cv-

[5] The Undersigned notes that citations to real cases with fabricated quotations or explanatory parentheticals which do not accurately reflect the holding of the case cited is a trademark of AI hallucinations that could lead to possible sanctions. *See Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*, No. 23-cv-11342, 2025 WL 2105286, at *1 (E.D. Mich. July 28, 2025).

11423, 2017 WL 8810687, at *8 (E.D. Mich. Nov. 7, 2017), *R&R adopted*, 2018 WL 747706 (E.D. Mich. Feb. 7, 2018).”))). This argument is similarly lacking. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (“[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.” (quotation omitted)). *Crawford* dealt only with dismissing the MDOC director from a deliberate indifference claim where the plaintiff had not alleged any personal involvement by her nor “reference[d] a specific policy, such as any of the specific policy directives concerning healthcare” that was the “‘moving force’ behind the alleged deliberate indifference.” *Crawford*, 2017 WL 8810687, at *8. Here, in contrast, Plaintiff alleges direct personal involvement by Director Washington in the alleged constitutional deprivations *and* policies which prevented him from engaging in the grievance process. (*See, e.g.*, ECF No. 27-1, PageID.291). Again, Defendants’ minimal engagement with the specifically alleged facts here, and their failure to cite relevant caselaw, demands that this Court deny their arguments.

Defendants fare better in their next argument. Defendants argued in their motion to dismiss that Plaintiff’s ADA and RA claims (1) could not be brought against Defendants in their individual capacity and (2) to the extent that Plaintiff brings these claims against every Defendant in his or her official capacity, the claims

were redundant except as to the claim against the state. (ECF No. 12, PageID.95–96). Plaintiff conceded the first point but did not address the second point. (ECF No. 23, PageID.246). His proposed amended complaint therefore brought his ADA and RA claims against all Defendants in their official capacities. (ECF No. 27-1, PageID.317–18). MDOC Defendants argue that, to the extent they are named in their official capacity, the claims against them are redundant to the claims against the State of Michigan. (ECF No. 30, PageID.340).

"The courts have recognized that, where an entity is named as a defendant, official capacity claims against employees of the entity are redundant." *Thompson v. Washington*, No. 21-cv-683, 2022 WL 2128264, at *10 (W.D. Mich. June 14, 2022) (collecting cases). Therefore, the Undersigned recommends **DENYING** Plaintiff's motion to amend (ECF No. 27) to the extent it seeks to bring ADA and RA claims against any individual Defendants in their official capacities. Only Plaintiff's ADA and RA claims against the state and Jackson College would remain if this recommendation is adopted.

Finally, Defendants make a barebones argument that Plaintiff's proposed amended complaint is just as conclusory as his first complaint. (ECF No. 30, PageID.340 (*comparing* ECF No. 1, PageID.16–18, *with* ECF No. 27-1, PageID.310–16)). But Defendants have again failed to engage with Plaintiff's proposed amended complaint. Plaintiff's original complaint made potentially

conclusory allegations against all Defendants without putting them on notice of the specific allegations against them:

> As a result of the above stated policies, practices, and conduct of the Defendants' State of Michigan, the MDOC, JC, and the Individual Defendants, acting in their individual and official capacities, Plaintiff was treated with deliberately indifferent class-of-one an imus in an arbitrary manner. The Individual Defendant's failed to safeguard Plaintiff's protections as clearly mandated by the 1st and 14th Amendments. Their conduct displayed animus through maliciously arbitrary treatment of Plaintiff with intentional discrimination against his efforts to obtain an education comparatively given to those similarly situated and continued such conduct by falsifying ADA requests given to her by Plaintiff in "good faith," without any rational basis for the difference. The Individual Defendant's response to Plaintiff's repeated complaints was to actively collude, ignore Plaintiff's entitlement of equal protections under the law, by knowingly displaying disparate treatment in an ongoing arbitrary and malicious manner with unambiguous animus that required intervention.

(ECF No. 1, PageID.16). In comparison, Plaintiff's proposed amended complaint details specific instances of conduct against Defendant Washington and other individually named Defendants which he alleges were violations of his constitutional rights:

> Defendant Washington, acting under color of state law, denied Plaintiff his constitutional right to equal protection and due process when she:
>
> a. Created a custom, policy, and practice of preventing prisoners with disabilities like blindness any meaningful access to grievance and accommodation appeal processes, thus making it impossible for Plaintiff to engage in certain appeal processes;
>
> b. Intentionally conspiring with other named defendants, as identified above and throughout this Complaint, to prevent Plaintiff from receiving reasonable accommodations or access to this education;

> c. Encouraging, creating, authorizing, permitting, and/or ratifying the behavior of MDOC staff and agents, as well as collaborating with that staff and staff of Jackson College, to intentionally prevent Plaintiff from reasonable accommodation and/or access to the educational program to which he was admitted.

(*See, e.g.*, ECF No. 27-1, PageID.311). Defendants' failure to engage with the specifically alleged facts weighs against their opposition to allowing Plaintiff's amendments, which should be freely allowed at this stage of the case, as discussed above. In other words, where Defendants have failed to properly engage with the differences between the original complaint and the proposed amended complaint, this Court should exercise its discretion to deny the pending motion to dismiss as moot. *Billings*, 2025 WL 2799976, at *2 ("District courts have discretion to apply a pending motion to dismiss to portions of an amended complaint that are 'substantially identical to the original complaint.'"). Therefore, except as identified above, the Undersigned recommends the Court **GRANT** Plaintiff's motion to amend his complaint (ECF No. 27) and **DENY AS MOOT** Defendants' motion to dismiss (ECF No. 12).

### D. Conclusion

For these reasons, **IT IS RECOMMENDED** that the Court **GRANT IN PART** Plaintiff's motion to amend (ECF No. 27), and **DENY IN PART** the motion as to Plaintiff's ADA and RA claims against all Defendants but the State of Michigan and Jackson College. **IT IS FURTHER RECOMMENDED** the Court **DENY AS**

**MOOT** Defendants' motion to dismiss (ECF No. 12).

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R.

Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 21, 2026

s/PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge